## BOWEN, Adm'r, *v.* EVANS *et als.*

1. CLERK AND MASTER. *Not liable. When.* Where funds are loaned in pursuance of a decree, and no order made for their collection, neither the clerk and master nor his sureties are liable.

2. SAME. *Commissioner. Not allowed to receive anything but money.* The clerk and master, as commissioner, is not allowed to receive anything but money on the purchase price of lands sold, and therefore his sureties cannot be held to account for sums paid in claims and tax receipts.

3. SAME. *Reappointment. Liability of sureties upon different bonds.* When a clerk and master is reappointed and executes his bond as commissioner and receiver, the sureties on his first bond are only liable for money received from sale of land prior to the execution of his second bond, and the sureties upon his second bond are liable for money received afterwards.

### FROM CLAIBORNE.

Appeal from the Chancery Court at Tazewell.    H. C. SMITH, Ch.

FULKERSON for complainant.

ROSE, ROGAN and WASHBURN for defendants.

TURNEY, J., delivered the opinion of the court.

On the 8th of October, 1866, James R. Evans was appointed clerk and master of the Chancery Court at Tazewell. He was also appointed special commissioner and receiver, and executed bond in the penalty of twenty thousand dollars, conditioned that he would "account for and pay over as required by law the proceeds of all property or all funds which may come into his hands as clerk and master, or as special commissioner or receiver appointed by the Chancellor."

At the October term, 1868, the master was directed to sell lands. The sale was made, of which there was confirmation at the October term, 1869. Of the purchase money Evans received several thousand dollars prior to October 12, 1870, at which time he was again appointed clerk and master and special commissioner and receiver, and executed bond with like condition as the first, and afterwards received fifty-one dollars of the purchase money.

This bill is filed to have him and his securities account for the moneys received. Both sets of securities are before the court.

At the October term, 1870, there was a consent decree, reciting that there was a considerable portion of the funds in the hands of Evans, and directing him to loan it and such others as might be paid in to him. He loaned four hundred dollars to F. M. Fulkerson, which has not been paid in money. He made no other loan.

One of the purchasers of the land paid part of the purchase money due from him in money and one thousand dollars in claims, purchased on the estate of the dead man whose lands had been sold. He also paid $151.80 in receipts for taxes claimed to be due from the land at the time of his purchase.

It is insisted by each set of sureties that neither is liable, and, in support of this position, it is argued the decree of October, 1870, constituted Evans the private agent of the parties, and relieved him of the trust capacity of commissioner, and his sureties of their liability for him. We think not. That decree

merely recites that the cause would not for sometime to come be in condition for final settlement, and therefore the order to loan is made. There is nothing showing how much of the fund was in the hands of the commissioner, nor how much was outstanding, nor does the commissioner in any way account for the funds in his custody, or that should be in his hands.

As the $400 was loaned in pursuance of decree and no order was made for its collection, neither Evans nor his sureties will be held to account therefor. The commissioner was authorized in law to receive nothing but money on the purchase price of the lands, and therefore his sureties cannot be held to account for the $1,000 paid in claims nor the amount paid in tax receipts. The sureties on the first bond are liable for the amount received by their principal prior to his second appointment in October, 1870.

In *Williams* v. *Bowman*, 3 Head., 682, Judge McKinney says: "In our view, the appointment as special commissioner is distinct from the office of clerk, under the statute; its duties do not appertain to the proper functions of the office of clerk. The appointment is not under the Constitution, but under the authority conferred by the statute. The duration of the appointment is not limited by law; this is left to the discretion of the court, according to the exigencies of the various cases that may arise. And if the duration of the appointment be not limited as to time by the court in the order of appointment, it follows, of course, that the appointment continues until

the duties of the trust are discharged. The special commissioner is properly a trustee, and the condition of the bond obliges him to perform all the duties of the trust. · By the express terms of the condition, he is bound faithfully to account for and pay over all such sums as may come into his hands as such special commissioner. He received the money in his character of trustee when it fell due, and the relation of trustee continued to exist until the money was accounted for and paid over; it could have no earlier termination."

This opinion was quoted and approved in the case of *The State ex rel. Terry, Walsh et al.* v. *Blakemore et als.*, 7 Heis., 638, and in the case of *Moore* v. *Vance*, MSS., at the last term at Knoxville. We think the rule is well supported in reason, and adhere to it.

If, then, the relation of trustee continues until the money is accounted for and paid over, it follows, in the opinion of Judge Cooper and of the writer, that the fifty-one dollars collected by Evans after his second appointment, was collected in his capacity of trustee created at the time he was directed to sell the lands, etc., and must be primarily accounted for upon the bond under which he took upon himself the duties of such trustee. A majority of the court are, however, of a contrary opinion, and hold that the sureties on the second bond must account for the two items of twenty and thirty-one dollars, respectively, collected after the execution of said second bond.

Bowen *v.* Evans.

The fact that the decree for sale directs "the master" to sell, etc., makes no difference.   In the Williams and Bowman case this question was directly made.   "The clerk" was directed to sell.   Upon this question Judge McKinney says: "The argument for the complainant takes for granted that Dye received the money as former clerk; but this is assuming the very point in controversy.   The question upon which the determination of the case depends is this, are the offices of clerk and special commissioner as one and the same office under the statute, or as separate and distinct offices?" and then proceeds to state the distinction as already indicated.   The law refers the acts of Evans to the office where duties require their performance.

We think the time at which the Chancellor directed interest should commence, as nearly correct as can be ascertained.   The decree relieving the sureties on the bond of October, 1866, and making liable those on the bond of October, 1870, is reversed.   A decree will be passed here according to the principles announced in this opinion.